Estate of Joseph A. Barry, Sr., Marie A. Barry, Co-executrix, and Joseph A. Barry, Jr., Co-executor v. Commissioner.
Estate of Barry v. Commissioner
Docket No. 48378.
United States Tax Court
T.C. Memo 1956-97; 1956 Tax Ct. Memo LEXIS 199; 15 T.C.M. (CCH) 502; T.C.M. (RIA) 56097; April 27, 1956
*199 Leon Meltzer, Esq., for the petitioners. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined a deficiency in estate tax in the amount of $52,226.83 for the estate of Joseph A. Barry, Sr., deceased. The issues presented for our decision are the correctness of the respondent's action in determining (1) that the fair market value of the decedent's interest in certain real property was $49,340.26 on January 7, 1949, and (2) that the interest of the decedent's wife in a testamentary trust is not a deductible property interest within the meaning of section 812(e)(1)(F) of the Internal Revenue Code of 1939. General Findings of Fact A portion of the facts have been stipulated and are found accordingly. Joseph A. Barry died on January 7, 1949. The decedent's will was admitted to probate in the Register of Wills Office of Philadelphia County, Pennsylvania, on January 14, 1949, and on that date letters testamentary were issued to his widow, Marie A. Barry, and his son, Joseph A. Barry, Jr. The Federal estate tax return of the estate of Joseph A. Barry, Sr., was filed with the collector of internal revenue for the first district of Pennsylvania *200 on April 6, 1950. Issue 1. Property Valuation Findings of Fact At the time of his death, decedent was the owner of premises located at 222 South Eighth Street, Philadelphia, Pennsylvania, upon which there were two buildings, one of which was a 3-story building erected in 1860 and located on the rear of the lot. The land contained an area of 6,401 square feet with a frontage of 25 feet on Eighth Street. On February 17, 1946, decedent leased the property to Rosatto-Barry Company, a partnership consisting of himself and his two sons, at a rental of $250 per month. The lease was for a term of 20 years and was to continue from year to year thereafter until terminated by either party. The lease agreement permitted the lessees to erect improvements at their own expense without obtaining permission of the lessor but provided that such additions and improvements were to revert to the lessor upon termination of the lease. During 1946 and 1947, the lessees erected on the property a modern one-story brick building at a cost of $43,658.52. The floor area of the building was approximately 3,470 square feet and was covered with asphalt tile. The building was steamheated and had fluorescent *201 lighting. It had a modern bulk window which fronted on Eighth Street. The property was used by the Rosatto-Barry Company for offices and for the manufacture, display and sale of pool tables. In the estate tax return filed on behalf of the estate of Joseph A. Barry, Sr., the decedent's interest in the premises at 222 South Eighth Street, Philadelphia, was valued at $15,000. Moreover, decedent's one-third partnership interest in the leasehold improvements erected on the property by the Rosatto-Barry Company were included in the estate tax return at a valuation of $14,552.84. At the time of decedent's death, the lease on the property at 222 South Eighth Street, Philadelphia, had approximately 17 years to run. The net rental realized by decedent from said premises was $1,940 per year. The fair market value of the decedent's interest in the foregoing property on January 7, 1949, was $22,500. Opinion The respondent has determined that the fair market value of the decedent's interest in the above-described property on January 7, 1949, was $49,340.26, and consequently that the gross estate of Joseph A. Barry should be increased by $34,340.26. Petitioners contend that the fair market *202 value of decedent's interest as of January 7, 1949, was $21,066.66 and that his gross estate should be increased by an amount not in excess of $6,066.66. After carefully considering all of the evidence bearing on the question, including the testimony as to value of a witness offered by petitioners, we have concluded and found as a fact that the fair market value of the decedent's interest in the property on January 7, 1949, was $22,500. Issue 2. Qualification for Marital Deduction Findings of Fact At the time of his death, decedent's assets included interests in a variety of business enterprises in addition to real estate, stocks, bonds and mortgages. The will of decedent, executed on or about April 29, 1948, contained the following provisions: "FIFTH: I give, devise and bequeath my one-third interest in Rosatto-Barry Company to my executors, IN TRUST NEVERTHELESS, to operate said interest in my place and stead and all funds or monies received from said one-third interest are to be paid over by them into the general trust fund created in the next paragraph of this my will. Upon the death of my wife, Marie A. Barry, my one-third interest in said Rosatto-Barry Company shall *203 be offered for sale at a fair price to the remaining owners of said Rosatto-Barry Company, and the monies so received from said sale are to be added to the corpus of the general trust hereinafter created. "SIXTH: All the rest, residue and remainder of my estate composed of bank accounts in my name other than bank accounts which I have with my wife, stock, bonds, mortgages, including that on the bowling alleys at South Juniper Street, Philadelphia, Pennsylvania, the conditional sales contract on my Pennsgrove, New Jersey property, my interest in Mapleway Company and other businesses operated by me as bowling alleys or otherwise, including the Circle Bowling Alleys at 4671 Darrah Street, Frankford, Philadelphia, Pennsylvania, and all other real estate of which I may die seized, all revenue from any business in which I am engaged until the same might be disposed of and any other thing of interest and particularly rent from the lease of property situate 222 S. 8th Street, Philadelphia, Pennsylvania, and including the Kinzer Manufacturing Company located at Flourtown, Pennsylvania, unto my wife, Marie A. Barry, and my son, Joseph A. Barry, Jr., IN TRUST NEVERTHELESS, to manage any of *204 my businesses in person or by agent, to rent, mortgage, and to sell only if to the best advantage and interest of the estate, to invest and reinvest the principal and to divide the income therefrom as follows: "(a) Forty (40%) per cent. to my wife, Marie A. Barry, during the term of her natural life, and at her death the right to dispose of the said 40% income, or 40% of the corpus of the trust, under the terms of her will; but it is my desire that she not make such provisions that will necessitate the sale of assets immediately after her death which might tend to defeat the purpose of the general trust which I have herein created. "(b) Twelve and one-half (12 1/2%) per cent. to my daughter, Marie T. Kazal. "(c) Twelve and one-half (12 1/2%) per cent. to my son, James J. Barry. "(d) Seven and one-half (7 1/2%) per cent. to my son, William F. Barry. "(e) Seven and one-half (7 1/2%) per cent. to my son, Joseph A. Barry, Jr. "(f) Twenty (20%) per cent. of said income to be divided equally among all my grandchildren living at the time of my decease, share and share alike, to be used by William F. Barry for his children, Joseph A. Barry, Jr., for his children and Marie T. Kazal *205 for her children, for their education. In the event of the death of their father or mother, as the case may be, or the removal or resignation of their father or mother, the distribution of income by their guardian will be subject to the approval of my trustees or executor and executrix, as the case may be. "SEVENTH: In the event that any of my grandchildren dies after my death before the youngest of said grandchildren arrives at the age of 25 years, his or her share of income shall be used for the benefit of the surviving brothers and sisters of the said deceased grandchildren. In the event that there are no surviving brothers or sisters of any deceased grandchild, his or her share shall be divided equally among his or her surviving cousins. "EIGHTH: In the event that my son, James J. Barry, dies intestate, his said twelve and one-half (12 1/2%) per cent. income shall revert to the trust estate. However, in the event that my son, James J. Barry, dies testate, he may in his will direct the distribution of his said twelve and one-half (12 1/2%) per cent. income among the life tenants and remaindermen of my trust estate in any manner he pleases but any bequests of income outside of *206 the aforementioned life tenants and remaindermen shall be void and the excess revert to the estate. "NINTH: In the event of the death of any of my other children, the said deceased child's share of income and/or corpus of this trust represented by the percentage interest herein given to my said children shall be given to the surviving children of any deceased child of mine, in equal shares. However, in the event that any of my other children shall not at the time of his or her death leave children him or her surviving, then said deceased child's interest shall pass to and be divided equally between my surviving children. "TENTH: At the time my youngest grandchild reaches the age of 25 years, the trust hereinabove created and referred to shall cease, and all assets held by said trust shall be sold and divided among the surviving children and grandchildren as their interests may appear by reference to the above enumerated percentages, or any change in them caused by the death of any of my children and/or grandchildren. "ELEVENTH: All the income in the various trusts set forth under Clause SIXTH, sections (a) to (f), inclusive, shall be paid quarterly; and shall be free and clear *207 of the respective recipient's debts, contracts, engagements, alienations and anticipation and free and clear of all levies, attachments, executions and sequestrations." In the Federal estate tax return filed on behalf of Joseph A. Barry, a total marital deduction was claimed in the amount of $149,769.41. The foregoing amount included a deduction of $113,462.71 representing the value of the fractional interest of decedent's wife in the assets of the general trust fund created under Clause SIXTH of the decedent's will. The respondent has allowed a marital deduction of only $32,863.59, disallowing the aforementioned amount of $113,462.71, as adjusted. On January 5, 1955, after the institution of the instant proceeding, the petitioners, as trustees of the decedent's estate, filed an account with the Orphans' Court of Philadelphia County, Pennsylvania. Pursuant to the audit of the account, the petitioners requested the Orphans' Court to adjudicate the question of whether the decedent created one trust or several trusts of his residuary estate under Clause SIXTH of his will. Petitioners further requested the Orphans' Court to grant them permission to divide the general trust fund created *208 thereunder into two or more separate funds for purposes of administration. On December 27, 1955, the Orphans' Court issued an adjudication confirming the trustees' account and stating as follows: "Under the provisions of the will quoted above * * * the Auditing Judge is of the opinion and so finds that the testator created several separate and distinct trusts of the various fractional interests designated in subdivision (a), (b), (c), (d), (e), and (f) in Clause SIXTH of the will and that the trustees are entitled to divide the general trust fund into two or more separate funds for purposes of general administration in the event that they should deem it necessary. * * *" Opinion In Clause SIXTH of the will, the decedent left the residue of his estate in trust. He directed that all of the trust property be administered as a single fund, the income from which is to be divided among several beneficiaries. The respondent has taken the position that the decedent created a single testamentary trust and that the interest of his widow therein does not qualify for the marital deduction within the meaning of section 812(e)(1)(F) of the 1939 Code [1] because she is not entitled for life *209 to all the income from the corpus of the trust and does not have the power to appoint the entire corpus free of the trust. Petitioners contend, however, that the decedent created several separate and distinct trusts of the various fractional parts of the residual estate, as enumerated in subparagraphs (a) through (f) of Clause SIXTH of the will, and that under the terms of one of the trusts (subparagraph (a)), the decedent's spouse is entitled to all of the trust income for life with the general power thereafter to appoint the corpus by will. Petitioners therefore urge that the property constituting the corpus of this trust qualifies for the marital deduction under section 812(e)(1)(F) of the 1939 Code. *210 In support of his position, the respondent relies upon our decisions in Estate of Louis B. Hoffenberg, 22 T.C. 1185, and Estate of Arthur Sweet, 24 T.C. 488. However, we are of the opinion that the situations presented in those cases are factually distinguishable from the situation before us. Resolution of the question whether one or more trusts were created depends upon the intention of the decedent as disclosed by the provisions of the will in the light of the circumstances surrounding its execution. The will of Joseph A. Barry, Sr., refers to the trust in the singular ten times, and by such phrases as "the trust estate," "my trust estate," "this trust," "the trust," "the general trust," and "the general trust fund." In Clause FIFTH of the will the decedent speaks of "the general trust fund created in the next paragraph of this my will," and "the general trust fund hereinafter created." The assets of the decedent at the time of his death included interests in a variety of business enterprises, in addition to stocks, bonds, mortgages and real estate. The two phrases in Clause FIFTH, referring to "the general trust," would indicate an intention that these *211 assets be managed as a single fund in order to obtain uniform production and distribution of income to the several beneficiaries. In Clause SIXTH, subparagraph (a), relating to the trust created in favor of his wife in 40 per cent of the general trust assets, the decedent again speaks of "the general trust which I have herein created." In Clause ELEVENTH of the will, the following reference appears: "All the income in the various trusts set forth under Clause SIXTH, sections (a) to (f) inclusive, shall be paid quarterly * * *." [Italics added.] The fact that the decedent provided different schemes of gifts over in the event of the death of the several beneficiaries is further evidence of his intention to create multiple trusts. The beneficiaries of the several trusts were the decedent's wife, children and grandchildren. With the exception of the trust for the benefit of his wife, the will provided that all trusts would terminate when the decedent's youngest grandchild reaches age 25. It also provided that if any grandchild should die before the youngest grandchild reaches 25, his share of income and ultimately of principal shall go to his or her surviving brothers and sisters. *212 The foregoing provision for gifts over in the event of the death of a grandchild differs from the provision for gifts over in the event of the death of decedent's children. In the event of the death of decedent's son, James, his share shall go to such other beneficiaries as he may by will determine and if he should die intestate, his share would revert to the general trust fund. However, in the event of the death of any of the decedent's other children, his or her share shall go to his or her surviving children; but in the event of death without children, the share will pass to his or her surviving brothers and sisters. With respect to the trust created in favor of the decedent's widow, there is no provision for gift over if she should die prior to the time when the youngest grandchild attains age 25. Instead, she is given a general power to appoint the corpus of the trust by will. Moreover, the will provides a different termination date for the fractional interest comprising the trust for the benefit of the decedent's wife, inasmuch as she may by will appoint the entire corpus free of the trust. This provision for the earlier termination of the interest of the wife in the trust *213 property is a further indication that the decedent intended his wife's undivided interest in the residual assets to constitute the corpus of a separate trust. The different termination dates provided, the different provisions made for gifts over in the event of the death of the several beneficiaries, together with the express reference to "the various trusts set forth under Clause SIXTH, sections (a) to (f), inclusive," persuade us that the dominant intention of the decedent was to create several separate and distinct trusts under Clause SIXTH of his will. The various references to the "trust" in the singular apparently refer to the unitary character of the fund in which he intended the several trusts to be administered. We accordingly hold that the trust created in favor of decedent's wife consisting of 40 per cent of the assets of decedent's residual estate, granting to the wife 40 per cent of the income from such property for life, and vesting in her the right to appoint by will 40 per cent of the residual assets free of the trust, qualifies for the marital deduction within the meaning of section 812(e)(1)(F) of the 1939 Code. Decision will be entered under Rule 50. Footnotes
1. SEC. 812. NET ESTATE. For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate - * * *
(e) Bequests, Etc., to Surviving Spouse. - (1) Allowance of marital deduction. - * * *
(F) Trust with Power of Appointment in Surviving Spouse. - In the case of an interest in property passing from the decedent in trust, if under the terms of the trust the surviving spouse is entitled for life to all the income from the corpus of the trust, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the corpus to any person other than the surviving spouse - * * *↩